UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEY VOGEL,   No. 07-10509

      Plaintiff,   District Judge Paul V. Gadola

v.   Magistrate Judge R. Steven Whalen

RICHARD CHIPMAN,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

On February 1, 2007, Plaintiff Joey Vogel filed a civil rights complaint in this Court, pursuant to 42 U.S.C. § 1983, against Defendant Richard Chipman, a Royal Oak, Michigan police officer. Before the Court is Defendant's Motion for Summary Judgment [Docket #12], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have stipulated that the Court may decide the motion on the written pleadings, without oral argument [Docket #28]. For the reasons discussed below, I recommend that Defendant's Motion be DENIED.

      **I.   FACTS**

This is an excessive force case against a police officer. In his Complaint [Docket #1], Plaintiff alleges that on or about November 19, 2006, he was in the vicinity of Woody's Diner, a bar in Royal Oak, Michigan, when Defendant Chipman, a police officer acting under the color of law, "for no reason grabbed Plaintiff and threw Plaintiff

-1-

to the ground which caused Plaintiff to fracture his wrist." Complaint, ¶¶ 8-9. Plaintiff alleges that there was no legal justification for Defendant's actions, *id.* ¶10, and that Defendant acted in violation of the Fourth and Fourteenth Amendments. *Id.* ¶ 13.

In the present motion, the parties both rely to a large extent on the deposition testimony of the Plaintiff and his companions on the night in question, Keith Badger, Jessica Boyd, and Branden Davidson. In addition, James Harvey, the owner of Woody's Diner, was deposed.[1] There is no deposition from Defendant Chipman before the Court.

The Plaintiff testified that on the evening of November 19 and into the early morning hours of November 20, 2006,[2] he was out with his friends Keith Badger, Branden Davidson and Jessica Boyd. They first went to the Croation Club, arriving around 8 p.m. and staying about one hour. Plaintiff drank one beer at the Croation Club. *Vogel Dep.*, 43-44. From there, they went to the Fifth Avenue, a bar in Royal Oak, where the Plaintiff drank a "couple of beers" and a shot or two. *Id.*, 45-48. The group then proceeded to Woody's, which was nearby, and they were all served drinks. *Id.*, 48. Plaintiff testified that they tried to go to an upstairs level at Woody's, but the bouncer

---

[1] The deposition transcripts are attached to the pleadings as follows:

Plaintiff Joey Vogel– Defendant's Exhibit 1; Plaintiff's Exhibit 1
Keith Badger– Defendant's Exhibit 2; Plaintiff's Exhibit 3
Jessica Boyd– Defendant's Exhibit 3; Plaintiff's Exhibit 2
Branden Davidson– Defendant's Exhibit 4; Plaintiff's Exhibit 4
James Harvey– Defendant's Exhibit 5; Plaintiff's Exhibit 5

[2] Other witnesses place the date at the night of November 18 and early morning of November 19. Hence the "on or about" language in the Complaint.

would not let them do so, saying that they were too intoxicated. *Id.*, 49-50. The Plaintiff asked the bouncer, probably more than once, why they were not allowed upstairs. Less than one minute later, a police officer said, "You're out of here." *Id.*, 52-54. Plaintiff testified that then, Defendant Chipman "just grabs me and throws me out the side door." He said that Chipman "basically took my arm and pulled it behind me and then took me to the door," with one hand on Plaintiff's wrist, behind his back. *Id.*, 55-56. He states that Chipman "just pushed me right basically through the door and out the- - out the side there," and that he (Plaintiff) fell and broke his wrist. *Id.*, 56. Plaintiff further described the incident as follows:

> Q: When he threw you or pushed you out the door, I mean, he's just physically pushing you out the door; correct? He's pushing on your wrist behind your back and has a hold of you around your chest or shoulder; right?
>
> A [by Plaintiff]: Yeah. And then he pushed me on the shoulder when we were going through the door so I come flying out.
>
> Q: When you say flying out, what do you mean by that?
>
> A: Basically it was back- - I was back going out.
>
> Q: Do you think you took a couple of steps and then fell to the ground?
>
> A: No. I just- - from the door to the- - to the cement.
>
> Q: Okay. Was there a step there?
>
> A: Yeah there's steps there.
>
> Q: Is it because you lost your balance on the step?
>
> A: No. It's because he physically pushed and threw me out the door.

Q: Well, he's pushing you- - I understand that he has a hold of your arm behind your back; correct?

A: Yes.

Q: So he's- - he's behind you; correct?

A: But when we got to the door, he pushed on my shoulder.

Q: Okay.

A: and I wound up going into the side of the door like that, you know, kind of on a- - on a angle.

Q: Okay. so he's just kind of pushing- -

A: Right.

Q: turning you as you're going out the door; right?

A: Yes.

Q: Okay. And you - I mean, it's not like he lifted you up and then - off your feet and threw you headfirst into anything?

A: No.

Q: I mean, you've seen - have you seen those, I don't know, I call them the old western movies where they kind of slide you on the bar and you go head first out the door? That didn't happen, did it?

A: No. It Wasn't like that. It was, you know, basically he used my body to open the door, though. You know, I just - I slammed against the door and went out. *Id.*, 59-61.

Plaintiff testified that Branden and Jessica took him to the hospital, where he was treated for his wrist injury. *Id.*, 61.

Keith Badger testified that he and his friends began the evening at the Croation

Club, and then proceeded to the Fifth Avenue Bar in Royal Oak. He conceded that by the time they left the Croation Club, he "was buzzing," meaning that he was feeling the alcohol. *Badger Dep.*, 13-14. The group arrived at Fifth Avenue at 10:30 or 11:00 p.m., and he drank three more beers. They stayed at Fifth Avenue at least 40 minutes, and then walked to Woody's, which was about one block away. *Id.*, 16-18. Everyone got drinks, but when they attempted to go to the upstairs level, the bouncer stopped them, saying, "You guys are too drunk to go up anywhere." *Id.*, 18-20. After some conversation, the bouncer told them that they would have to leave. The Plaintiff asked if he could finish his beer. Badger testified that "Joey (the Plaintiff) was in the middle of putting his beer up and he was going to go put it back down, and the cop grabbed him right away. As soon as that bouncer said that, the cop was right on him." *Id.*, 21-22. He said that the Plaintiff's beer slammed to the floor and shattered. He testified that the officer (later identified as Defendant Chipman) "grabbed it right out of his (Plaintiff's) hand, so - and, I mean, didn't just remove - they grabbed it, ripped it, and it slammed on the floor and the whole nine yards." *Id.*, 12, 22. Badger described the Plaintiff's forcible removal from Woody's as follows:

> A (by Badger): He [Defendant Chipman] didn't grab the beer out of his hand and set it down or nothing. He grabbed his hand and spun him around.
>
> Q: Spun Joey around?
>
> A: Right. So he had his hand behind his back.
>
> Q: Okay.

-5-

A: So he had control of him. so - then he took him outside.

Q: When you say he took him outside, what do you mean by that?

A: He had his hands behind his back.

Q: Both hands behind his back.

A: Pushed him - possibly. I don't know. I'm not for sure. Took him through the doors.

Q: When you say took him through the -

A: Pushed him through the doors.

Q: How?

A: Didn't open the doors up for him. Pushed him through the doors, pushed him through the second set of doors, and threw him out. *Id.* 22-23.

Vogel further described the incident between Chipman and the Plaintiff:

Q: When you say Joey was thrown out the door, can you describe for me where the officer had a hold of Joey, what parts of his body?

A: I- not really, but I know he had his wrist because he had his hand - he had his arm behind his back. I know he grabbed the one arm. I don't know if he grabbed the other one and had both, because I just don't know. From the angel I was at, I couldn't - because he was already this way and I'm looking at his back. *Id.*, 24

Badger said that he saw a "lunge" when Chipman pushed the Plaintiff out the second door. *Id.*, 26.

After this incident, Badger himself got into an altercation with another police officer, and was charged with assault. He said that he pled down to a lesser offense. *Id.*, 27-28.

Jessica Boyd recounted the group's trip from the Croation Club to Fifth Avenue to Woody's. She testified that upon arriving at Woody's, everyone was served drinks. *Boyd Dep.*, 31-32. Although she and Branden had walked to the other side of the bar, she saw Plaintiff and Badger talking to the bouncer. *Id.*, 36. She opined that the Plaintiff was probably "legally" intoxicated at that point, but said that as a waitress/bartender who had training in when to cut off intoxicated customers, she would have served the Plaintiff alcohol. *Id.*, 42-43. She could not see everything that was happening, but she testified that the Plaintiff was pushed or shoved out the door. *Id.*, 41, 45.

Branden Davidson testified that everyone in their party was served drinks when they arrived at Woody's. *Davidson Dep.*, 24. Although he was 15 or 20 feet away, he saw a bouncer arguing with the Plaintiff. *Id.*, 24-25. Davidson said that very soon afterward, "Joe went flying out the door." *Id.*, 29-30. He said that a police officer had "[l]iterally grabbed and thrown [him] out the door." *Id.*, 30. He described the incident as follows:

> Q: Okay. Can you describe to me how the officer gets Joey to leave?
>
> A: Just grabbed him and threw him out. Just physically -
>
> Q: Grabbed him where?
>
> A: Upper - upper body.
>
> Q: What parts - what parts of Joey's body were touched by the officer?
>
> A: Up here. Like everything up here.
>
> Q: On the chest?

A: Chest area.

Q: Okay. In a pushing motion?

A: Pushing and - you know, just pushing, for - for lack of a better term.

Q: You see. that's the problem. I wasn't there, and I need you to use words as best you can to describe the motion of the - -

A: Pushing, but he also - at the same time when he's pushing, but he's also, you know, got - got his - his shirt and everything all, you know, locked up, so there was not place for him to go.

Q: Okay. And what happens?

A: They threw him out the door.

Q: When you said they threw him out - -

A: Police officer threw him out the door. *Id.,* 31-32.

James Harvey, the owner of Woody's testified that he was present at the time of this incident, but given that it happened about a year before his deposition, and the thousands of people he deals with as a bar owner, his memory of the events was not perfect. *Harvey Dep.,* 9-10. He testified that a group of people wanted to go to the upstairs level of the bar, but he told them they would have to wait in line. *Id.*, 11. He said that 10 minutes later, the group again tried to sneak upstairs, and he told them, "If you guys don't like it, you guys can either go out this door and you can leave or you stand in line. You guys got two options." *Id.*, 11. He said that one of the gentlemen "started talking some more stuff." *Id.,* 12-13. Harvey testified that Officer Chipman then "escorted" the customer out the door. *Id.*, 13. He said that Chipman walked up from

behind, and told the man, "Hey, it's time for you to go." He said, "And I was walking next to him. I opened the door for him, he put him out the door, turned around and walked back in." *Id.*, 19-20. He testified that another scuffle broke out inside, and he did not see the Plaintiff fall. *Id.*, 21.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v.*

*Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

#### A. Legal Framework for Excessive Force Claims

Plaintiff's Complaint is premised on an alleged violation of his Fourth Amendment rights. A claim of excessive force by the police during a street encounter is analyzed under the Fourth Amendment, and in scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). That standard is objective, and is applied without reference to the officer's subjective motivations. *Id*. In *Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004), the Court set forth the following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect pose[d] an immediate threat to the safety of

the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S. at 396. The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

### B. Legal Standards for Qualified Immunity

The Defendant seeks summary judgment based on his claim of qualified immunity, which is an affirmative defense. Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. Under *Saucier*, the inquiry is sequential, that is, the district court must first consider whether there was a constitutional violation.[3] *See also Baranski v. Fifteen Unknown Agents of the BATF,* 452 F.3d 433, 438 (6th Cir.2006) (en banc). When "the legal question of immunity is completely dependent

---

[3]The Supreme Court has granted certiorari in *Pearson v. Callahan*,_S.Ct._, 2008 WL 754340, directing the parties to brief and argue whether *Saucier* should be overruled.

upon which view of the facts is accepted by the jury," the "jury becomes the final arbiter of [a] claim of immunity." *Brandenburg v. Cureton,* 882 F.2d 211, 215-16 (6th Cir.1989); *Bouggess v. Mattingly* 482 F.3d 886, 888 (6th Cir. 2007). *See also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004), quoting *Pouillon v. City of Owosso,* 206 F.3d 711, 715 (6th Cir.2000) ("However, where the legal question of qualified immunity [in an excessive force case] turns upon which version of the facts one accepts, the jury, not the judge, must determine liability"); *Stickney v. Trikes*, 1990 WL 110855, *1 (6th Cir. 1990)(unpublished) ("It may well be that, under the circumstances present here, Officer Young acted in an objectively reasonable manner. That, however, is a question of fact and does not constitute the predicate for a claim of qualified immunity").

Once a defendant has met the burden of affirmatively pleading the defense, the ultimate burden of proof is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

### C. Application

The Defendant is not entitled to qualified immunity because there is a genuine issue of material fact as to whether Defendant Chipman's actions were reasonable under the *Graham v. Connor* formulation.

We begin with the three factors discussed in *Graham*. First, what was the severity of the Plaintiff's conduct? At the beginning of the episode, the yawn-producing facts show an intoxicated bar customer who is arguing with an employee about being admitted

-12-

to the upstairs section of a bar. Even Mr. Harvey, the bar owner, testified, "You know, I heard a couple remarks, but I hear that all the time, so it doesn't bother me." *Harvey Dep.*, 11. There is no evidence that the Plaintiff made any threats or acted in a physically intimidating manner toward anyone. While being argumentative with an employee might be considered obnoxious, it is not a crime.

The second and third factors may be considered together. Did the Plaintiff pose a threat to the safety of the officers or others, or did he actively resist or attempt to evade arrest? No. According to the testimony of Keith Badger, when the Plaintiff was asked to leave, he did not argue or act in a threatening or aggressive manner; he simply asked if he could first finish his beer. According to Badger, it was Defendant Chipman who initiated physical action, grabbing the beer out of Plaintiff's hand and causing it to smash to the floor, and then forcibly ejecting the Plaintiff from the bar. Significantly, there is no evidence that the Plaintiff fought back or resisted the officer in any way.

The Defendant argues that "the fact that Plaintiff was an intoxicated and disorderly patron in a crowded bar is factually significant to this case." *Defendant's Brief*, p.11. Setting aside the proposition that whether or to what extent the Plaintiff was "intoxicated and disorderly" is a question of fact better left to the jury, intoxication alone, or even if accompanied by verbal obstinacy, does not necessarily justify the degree of force alleged in this case. To suggest otherwise would leave the well-being of many bar patrons–perhaps some lawyers or judges among them– to the unchecked and unrestrained whims of overly zealous police officers, rendering the Fourth Amendment's standard of

reasonableness a mere illusion.

The Defendant relies heavily on *Marvin v. City of Taylor*, 509 F.3d 234 (6th Cir. 2007).[4] It is true that *Marvin*, quoting *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 174 (6th Cir. 2004), stated that "the definition of reasonable force is partially dependent on the demeanor of the suspect." *Marvin*, 509 F.3d at 244. However, *Marvin* involved "a very drunk elderly man" who plowed his car into another vehicle containing four small children. Furthermore, the plaintiff in *Marvin* later got into a fight in the booking room, and it took three officers to restrain him. Thus, *Marvin*, unlike the present case, involved a person who was intoxicated *and* who had committed a crime, *and* who was physically aggressive.

In *Solomon*, on the other hand, the Sixth Circuit found that the defendant police officer was not entitled to qualified immunity. There, the plaintiff was seated in a movie theater when the manager told her to leave because she did not have a ticket. She refused. When the police arrived and told her to leave, she again refused, and the police told her she was under arrest for trespassing. She physically resisted the police, and was then told she was under arrest for assaulting a police officer. She then agreed to accompany the officers to the lobby, where one of the officers grabbed her arm and attempted to "leg sweep" her. She was eventually taken to the ground and handcuffed, but suffered injuries as a result, including a fracture of her left elbow. Finding that there was at least a

---

[4] Defendant uses a LEXIS, rather than a F.3d citation.

question of fact as to whether the officers' actions were reasonable, the Sixth Circuit found it significant that the plaintiff posed no threat to the safety of the officers, bore no weapon and made no verbal threats. Nor did she attempt to flee. *Id.*, 389 F.3d at 174.[5]

The Plaintiff in this case was significantly less belligerent than the plaintiffs in *Solomon* and *Taylor*, and unlike them, he had not committed any crime when the officer grabbed him.

It is also important to examine the degree of force used in this situation by Defendant Chipman. The Defendant, of course, characterizes his actions as merely "escorting" the Plaintiff out of the bar. Indeed, he argues that he was not even responsible for Plaintiff breaking his wrist, because the Plaintiff "unexpectedly lost his footing and 'fell.'" *Defendant's Brief*, p.10. Defendant draws this inference based on an isolated portion of Plaintiff's deposition where he says, "I fell and broke my wrist." *Id.*; *Vogel Dep.*, 56. That snippet of transcript is taken out of context, and does not convey the true import of Plaintiff's testimony.[6] In fact, later in the deposition, the Plaintiff clearly indicates that he did not "unexpectedly lose his footing," but that he fell and broke his wrist because Chipman forcibly pushed him out the door:

"Q: Do you think you took a couple of steps and then fell to the ground?

A: No. I just- - from the door to the- - to the cement.

---

[5] The court also noted the disparity in size between the plaintiff and the officers.

[6] Defendant also submitted a CD of this portion of Plaintiff's deposition [Docket #23]. The CD does not add any particular illumination that the written transcript does not.

Q: Okay. Was there a step there?

A: Yeah there's steps there.

Q: *Is it because you lost your balance on the step?*

A: *No. It's because he physically pushed and threw me out the door.* (*Vogel Dep.*, 59-60 (Emphasis added).

He further describes being pushed and "flying" out the door. *Id.* Keith Badger also described the Plaintiff being pushed and thrown through the doors. *Badger Dep.*, 24, 26. Branden Davidson testified that Plaintiff was unable to move, because Chipman "had his shirt locked up" and there was nowhere for him to go. *Davidson Dep.*, 31-32.

Given the *Graham* factors, the argumentative but otherwise non-aggressive demeanor of the Plaintiff, and the degree of physical force applied by the Defendant, and even with the general deference given to on-the-scene decisions of police officers, this case presents genuine questions of material fact as to the reasonableness of Chipman's actions, and thus as to whether a Fourth Amendment violation occurred. Where such questions of fact exist, both qualified immunity and summary judgment are improper. Here, because "the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Pouillon v. City of Owosso, supra*, 206 F.3d at 715.

Plaintiff has therefore met the first prong of *Saucier*, in that he has sufficiently shown the violation of a constitutional right. He also meets the second prong, since his Fourth Amendment right to be free from unreasonable and excessive use of force by the

police was clearly established when his cause of action arose in November of 2006. The Supreme Court decided *Graham v. Connor* in 1989; the Sixth Circuit decided *Solomon v. Auburn Hills Police Dept.* in 2004.

## IV. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #12] be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

Dated: August 27, 2008

                          CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys
and/or parties of record by electronic means or U.S. Mail on August 27, 2008.


                                           s/Susan Jefferson
                                           Case Manager